UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
**STANLEY CHIN**,
:
:
Plaintiff,
:
:   **MEMORANDUM DECISION AND**
– against –   :   **ORDER**
:
:   23-CV-5268 (AMD) (JAM)
**NEW YORK CITY DEPARTMENT OF**
**CORRECTIONS** and **THE CITY OF NEW**   :
**YORK**,
:
:
Defendants.
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings retaliation claims under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law

("NYCHRL"), N.Y. Admin. Code §§ 8-107 *et seq.*, against his former employers, the New York

City Department of Corrections ("DOC") and the City of New York.  (ECF No. 1 ¶¶ 1, 11.)[1]

Before the Court is the defendants' motion to dismiss the complaint in part for failure to state a

claim upon which relief may be granted.  (ECF No. 16.)  As explained below, the defendants'

motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the plaintiff's complaint.  (ECF No. 1.)  The plaintiff,

a heterosexual Chinese man, worked for the defendants from April 2, 1987 until about June 1,

2020, when he retired.  (*Id.* ¶¶ 10–11, 47.)  On June 19, 2018, the defendants' EEO office

advised the plaintiff by letter that a coworker, Officer Nina Castleberry, filed a sexual

---

[1] The plaintiff withdrew his discrimination and hostile work environment claims under Title VII and the
  NYCHRL.  (*See* ECF No. 12 at 2; ECF No. 21 at 3.)

harassment complaint naming him as a "[r]espondent." (*Id.* ¶ 13.) On July 9, 2018, the plaintiff filed a rebuttal in which he made complaints about Castleberry, "Warden Charlton Lemon, ADW Demetria Gives (Executive Officer), and Officer John Harvin." (*Id.* ¶ 15.)[2] The plaintiff "described a number of specific instances of personal hostility towards himself and others relating to discipline and due to inter-office romantic relationships," including that Gives "was using her romantic relationship with Officer Harvin, a Union Delegate, in order to circumvent supervisory charges," and that Castleberry referred to the plaintiff as a "gay Chinese mother fucker" and made other derogatory comments about two other coworkers. (*Id.* ¶¶ 16–18.)[3]

The plaintiff alleges on information and belief that the "EEO Office failed to interpret the [rebuttal] as a charge of discrimination" despite his "clear and explicit statement that he wished to file a complaint and detailing extreme racial slurs." (*Id.* ¶ 20.) On August 18, 2018, the plaintiff learned that the EEO office "denied that he had filed an EEO complaint regarding the racial slurs and other activity in the workplace." (*Id.* ¶ 23.) On September 25, 2018, the plaintiff sent a letter to DOC Commissioner Cynthia Brann "describing his experiences with the [d]efendants' EEO office," including that "he had filed a complaint" with the EEO. (*Id.* ¶ 24.) The defendants did not respond. (*Id.* ¶ 25.) On February 19, 2019, the EEO office "officially

---

[2] The plaintiff alleges on information and belief that Castleberry did not accuse him of sexual harassment; rather, she alleged that "he had been aware of some aspect of the allegations." (ECF No. 1 ¶ 14.) It is not clear whether the plaintiff included this allegation in his rebuttal to the EEO. (*See id.* ¶ 15.) On about July 9, 2018, the plaintiff received an amended complaint that Castleberry filed with the EEO office, which "claimed . . . that [the plaintiff] had not sexually harassed her, but had . . . retaliated against her on behalf of another officer whose name was redacted." (*Id.* ¶ 21.) The plaintiff "refuted [those] allegations" in an "amended complaint." (*Id.* ¶ 22.)

On March 29, 2019, the EEO office found that Castleberry's allegations against the plaintiff "were unsubstantiated." (*Id.* ¶ 28.)

The plaintiff does not define the acronym "ADW," but the allegations suggest that it stands for "Assistant Deputy Warden."

[3] The plaintiff alleged that Officer Castleberry "referr[ed] to Captain Gamble as a 'Black Bitch'[] and . . . to Captain Hayes as a 'Sexual Predator.'" (*Id.* ¶ 18.)

acknowledged [the plaintiff's] complaint . . . by email" (*id.* ¶ 27), and on March 11, 2019, the

plaintiff "filed an official charge of discrimination and retaliation describing the incidents of

harassment and providing additional information regarding proof" (*id.* ¶ 29).  On July 22, 2019,

the EEO office concluded that the plaintiff's "allegations of discrimination and harassment on

account of [n]ational [o]rigin, [r]ace and [s]exual [o]rientation were substantiated." (*Id.* ¶ 41.)

The plaintiff alleges that the defendants began retaliating against him after he sent the

September 25, 2018 letter to the Commissioner.  (*Id.* ¶ 25.)  "[I]mmediately" after the plaintiff

sent the letter, the defendants began "reducing his overtime hours compared to others around

him" and "later disciplined [him] and removed him from the overtime list in retaliation for these

complaints."  (*Id.*; *see also id.* ¶ 26 ("[B]eginning in or around" November 2018, the defendants

"regularly passed [the plaintiff] over for overtime.").)  The defendants also "issued . . . monthly

overtime restriction[s]" on the plaintiff on March 26, 2019 (*id.* ¶ 31), April 18, 2019 (*id.* ¶ 32),

and September 16, 2019 (*id.* ¶ 43).  Because of these restrictions, the plaintiff could not work

overtime after he hit the monthly limit of 42 hours.  (*Id.* ¶ 31.)  However, the plaintiff alleges,

"almost every ADW" exceeded the monthly limit "due to a severe staff shortage."  (*Id.* ¶ 33; *see*

*also id.* ¶ 34.)  Only the plaintiff "and others who had engaged in protected activities" were

restricted from working beyond the monthly overtime limit.  (*Id.* ¶ 33.)  The plaintiff also alleges

that throughout this period, the defendants "assigned lower ranking" officers to take 56 overtime

shifts from officers "in [the plaintiff's] post," which, "upon information and belief," was "not

permitted under the [d]efendants' own rules and policies."  (*Id.* ¶ 44.)

The plaintiff alleges that his reduced overtime hours caused him to "los[e] substantial

income and benefits to which he would otherwise have been entitled" upon his retirement.  (*Id.*

¶ 46.)  The plaintiff's pension payout "is based on an average of his highest three . . . consecutive

years of income," and his loss of overtime due to the defendants' retaliation lowered his income "significantly." (*Id.* ¶¶ 46–47.)

He alleges other adverse employment actions as well. In about May 2019, Warden Lemon "unilaterally" decided to remove the plaintiff from his secret service detail, which was a "highly sought after assignment;" the plaintiff does not allege that Warden Lemon followed through on the decision and removed him from the detail. (*Id.* ¶ 37.) In June and September 2019, the defendants recategorized the plaintiff's requested vacation time as "time due" or "emergency personal days," which was "in effect a denial of [the plaintiff's] right to vacation days." (*Id.* ¶¶ 39, 42.) Finally, the defendants "force[d] [the plaintiff] to justify actions he took in the normal course of business." (*Id.* ¶ 30.)[4]

As a result of the defendants' conduct, the plaintiff alleges that he suffered "a loss of income, bonus, benefits, and other compensation," as well as "emotional, mental and physical distress," "future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses." (*Id.* ¶ 48.)

On about February 4, 2020, the plaintiff was promoted "to the position of Assistant Deputy Warden." (*Id.* ¶ 12.)

The plaintiff filed charges with the Equal Employment Opportunity Commission on January 9, 2020 and February 4, 2021, and received a right-to-sue notice on May 12, 2023. (*Id.* ¶ 4.) He filed the complaint in this action on July 10, 2023. (*Id.* at 10.)

---

[4] The plaintiff alleges one example. On or about May 14, 2019, Warden Lemon "demanded" that the plaintiff write a report "detailing who had authorized him to approve" a coworker's vacation days, "even though this was the typical process in the office." (*Id.* ¶ 30.) The plaintiff alleges that this request "was solely to harass and retaliate against [him]." (*Id.*)

The plaintiff asks the Court to declare that the defendants "engaged in unlawful employment practices" and award him damages "for all lost wage and benefits resulting from" the defendants' actions and for "mental, emotional and physical injury," liquidated and punitive damages, and fees, costs, and expenses.  (*Id.* at 9–10.)

## LEGAL STANDARD

A court considering a Rule 12(b)(6) motion must accept as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Although the pleading standard does not require "detailed factual allegations," it demands "more than labels and conclusions" and "a formulaic recitation of a cause of action's elements."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

An employment discrimination complaint need not include specific facts establishing a *prima facie* case of discrimination, but must "at a minimum assert nonconclusory factual matter sufficient to nudge[] [its] claims . . . across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (first citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); and then citing *Iqbal*, 556 U.S. at 680); *see also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020); *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015).  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

**I.**     **Claims Against the New York City Department of Corrections**

The plaintiff's claims against the DOC must be dismissed.  "New York City departments, as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008) (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)); *see* N.Y.C. Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").  The DOC is an entity within the New York City government and may not be sued; rather, as the plaintiff acknowledges, the City of New York is the proper defendant for his claims.  (ECF No. 21 at 3.) *See, e.g.*, *Johnson v. Dobry*, 660 F. App'x 69, 72 (2d Cir. 2016) (dismissing all claims against the DOC "because, as a city agency, it is not a suable entity"); *Sullivan v. City of New York*, 690 F. App'x 63, 66 (2d Cir. 2017) (same); *Johnson v. City of New York*, No. 18-CV-4030, 2020 U.S. Dist. LEXIS 7858, at *4 (E.D.N.Y. Jan. 16, 2020) (same).

**II.**    **Claims Against the City**

Both Title VII and the NYCHRL provide a cause of action for people whose employers retaliate against them for protesting their employers' discriminatory conduct.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89–90 (2d Cir. 2015) (Title VII); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (NYCHRL).  To state a retaliation claim under each statute, a plaintiff must plausibly allege that he "participat[ed] in a protected activity," that the defendant employer "knew of the protected activity," and that there is a "causal connection between the protected activity" and a retaliatory employment action.

6

*Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d at 173 (2d Cir. 2005)) (Title VII); *see Adams v. City of N.Y.*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (NYCHRL). Under Title VII, a plaintiff must show that the employment action was materially "adverse," *Hicks*, 593 F.3d at 164; under the NYCHRL, a plaintiff must show only that "something happened that would be reasonably likely to deter a person from engaging in such action," *Adams*, 837 F. Supp. 2d at 128 (quoting *Ellis v. City of New York*, No. 08-CV-7605, 2011 U.S. Dist. LEXIS 84104, at *28 (S.D.N.Y. July 28, 2011)); *see also Mihalik*, 715 F.3d at 112.

The type of causation required by the statutes varies. "Title VII retaliation claims require proof that desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Under the NYCHRL, by contrast, "a plaintiff need only allege that retaliatory animus played *some* role in the employer's decision." *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 U.S. Dist. LEXIS 198655, at *108 (S.D.N.Y. Oct. 24, 2020). A plaintiff can prove causation under both statutes either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170. "Indirect evidence of causation may include 'a showing that the protected activity was closely followed in time by the adverse action,'" *Kraiem v. JonesTrading Inst. Servs. LLC*, 571 F. Supp. 3d 53, 59 (S.D.N.Y. 2021) (quoting *Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 287 (S.D.N.Y. 2013)), but a gap of "more than a few months is generally too long" to infer causation without some other allegations supporting the inference of retaliation, *Williams v. A Team Sec., Inc.*, No.

20-CV-1568, 2023 U.S. Dist. LEXIS 57615, at *20 (E.D.N.Y. Mar. 31, 2023) (quoting *Wilson v. N.Y. & Presbyterian Hosp.*, No. 21-1971, 2022 U.S. App. LEXIS 34200, at *4 (2d Cir. Dec. 13, 2022) (summary order)).

The defendants do not dispute that the plaintiff plausibly alleged that he participated in a protected activity and that the defendants knew about it.  Rather, they argue that some of the alleged employment actions are insufficiently adverse, and that there is no evidence of a causal relationship between any of the plaintiff's protected activities and the September 2019 overtime restriction.

### a.    Adverse Employment Actions

The defendants do not dispute that restricting the plaintiff's monthly overtime hours and passing him over for overtime opportunities are adverse employment actions.  (*See* ECF No. 1 ¶¶ 25–26, 31–35, 43–44.)  They contend, however, that the plaintiff alleges other acts that are not "the type of conduct that is reasonably likely to deter a person from complaining about discrimination."  (ECF No. 17 at 7 (quoting *Richards v. Dep't of Educ. of N.Y.*, No. 21-CV-338, 2022 U.S. Dist. LEXIS 19674, at *65 (S.D.N.Y. Feb. 2, 2022)).)  Rather, they claim, the plaintiff alleges merely "petty slights, minor annoyances, and simple lack of good manners."  (*Id.* (quoting *Richards*, 2022 U.S. Dist. LEXIS 19674, at *65).)  These actions include "attempting to remove the plaintiff from the Warden's secret service detail (ECF No. 1 ¶ 37), making the plaintiff "justify actions he took in the normal course of business" (*id.* ¶ 30) and denying his requests to take vacation by recategorizing the leave as "time due" or "emergency personal days" (*id.* ¶¶ 39, 42).

"[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts

of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

The incidents about which the plaintiff complains, considered separately, are not actionable. Warden Lemon's "attempt[] to remove" the plaintiff "from his secret service detail" is not an adverse employment action because the plaintiff does not allege that the Warden actually removed him from the detail. (ECF No. 1 ¶ 37.) *See, e.g.*, *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-CV-3582, 2012 U.S. Dist. LEXIS 170917, at *33 (E.D.N.Y. Nov. 30, 2012) (courts in the Second Circuit "have generally declined to find that threats to demote [a] plaintiff or take disciplinary action constitute . . . adverse employment action[s]" for purposes of a retaliation claim). Requiring the plaintiff to write "a report detailing who had authorized him to approve" a coworker's vacation days "even though this was the typical process in the office" (ECF No. 1 ¶ 30) is a "mere inconvenience," *Anand v. N.Y. State Dep't of Taxation & Fin.*, No. 10-CV-5142, 2013 U.S. Dist. LEXIS 104424, at *14 (E.D.N.Y. May 28, 2013) ("[E]xcessive scrutiny do[es] not constitute adverse action[] in a Title VII retaliation context." (citations omitted)); *Deshpande v. Medisys Health Network*, No. 07-CV-375, 2010 U.S. Dist. LEXIS 37891, at *14 (E.D.N.Y. Apr. 16, 2010) ("[C]lose monitoring, without more, is insufficient to constitute a materially adverse action [for a retaliation claim] under Title VII."). Finally, recategorizing the plaintiff's vacation days as "time due" or "emergency personal days" is not sufficiently adverse or reasonably likely to deter him from engaging in protected activity, particularly because he was still allowed to take those days off from work.

However, considering this conduct in the aggregate along with the overtime restrictions — which the defendants do not challenge as insufficiently adverse — the plaintiff has plausibly alleged materially adverse employment actions sufficient to state Title VII and

NYCHRL retaliation claims.  *See, e.g.*, *Timothy v. Our Lady of Mercy Med. Ctr.*, No. 03-CV-3556, 2004 U.S. Dist. LEXIS 3970, at *19 (S.D.N.Y. Mar. 12, 2004) ("Even if none of the actions that a plaintiff alleges could individually be characterized as adverse, a series of actions taken against a plaintiff may, in the aggregate, constitute such conduct."); *Muniz v. City of New York*, No. 20-CV-9223, 2023 U.S. Dist. LEXIS 172413, at *26 (S.D.N.Y. Sept. 23, 2023) (acknowledging that "[t]he Second Circuit has allowed this sort of aggregation in the retaliation context" (citing *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002))).  In evaluating whether these actions are material, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context."  *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 225 (E.D.N.Y. 2014) (quoting *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011)); *see also, e.g.*, *Milien v. City of New York – Dep't of Educ.*, No. 20-CV-480, 2023 U.S. Dist. LEXIS 164771, at *54–55 (E.D.N.Y. Sept. 15, 2023).

Here, the alleged incidents are not isolated or one-off occurrences.  Moreover, the defendants took the challenged actions within a month or two of the actions that they admit were adverse — restricting the plaintiff's overtime hours.  This proximity suggests that the additional challenged actions were "part of a larger course of conduct," occurring over the course of six months.  *Tepperwien*, 663 F.3d at 568; *see also Fowler v. N.Y.C. Transit Auth.*, No. 96-CV-6796, 2001 U.S. Dist. LEXIS 762, at *21 (S.D.N.Y. Jan. 31, 2001) ("The accumulation of small reprisals may be aggregated so as to permit consideration of their impact in their totality." (citation omitted)).  Accordingly, even though some of the defendants' actions, considered individually, "might reasonably be tolerated" by a reasonable employee in the plaintiff's position, "the allegation of their combination, alleged to have been imposed only on [him]" and within a short time period, "suffices to survive a motion to dismiss."  *Massaro v. Dep't of Educ.*,

774 F. App'x 18, 22 (2d Cir. 2019) (summary order); *see also Freckleton v. Ambulnz NY LLC*,

No. 21-CV-4615, 2022 U.S. Dist. LEXIS 180014, at *19 (E.D.N.Y. Sept. 30, 2002) ("[I]t is

appropriate to take a 'generous view of retaliatory acts at the motion to dismiss stage.'" (quoting

*Ingrassia*, 130 F. Supp. 3d at 723–24)).

      **b.**    **Causation**

      The defendants argue that the plaintiff does not allege a causal connection between his

protected activities and the September 2019 restriction on his monthly overtime; they say that the

Court cannot infer causation because of the six-month gap between the last protected

activity — the March 2019 "official charge" of discrimination and retaliation — and the

September 2019 overtime restriction.  (ECF No. 17 at 10–11.)[5]

      The Second Circuit "has not defined 'the outer limits beyond which a temporal

relationship' ceases to imply causation," but "more than a few months is generally too long

without some other evidence of retaliation." *Wilson*, 2022 U.S. App. LEXIS 34200, at *4

(citation omitted).  Courts have drawn "inferences of causation from a temporal proximity of six

months or more when there is a reason to do so." *Williams*, 2023 U.S. Dist. LEXIS 57615, at

*20 (collecting cases).

      The sequence of events alleged in the complaint provide a sufficient basis to infer

causation at this stage of the proceedings.  The plaintiff alleges that on July 22, 2019 — less than

two months before the September 2019 overtime restriction — the "[d]efendants' EEO office

found that [his] allegations of discrimination and harassment were substantiated."  (ECF No. 1

¶ 41.)  It is reasonable to infer that the defendants retaliated against the plaintiff after the EEOC

---

[5] The defendants do not challenge the causal connection between the plaintiff's protected activity and the March and April 2019 overtime restrictions or passing over the plaintiff for overtime in November 2018.

found that his complaint had merit, especially because the defendants had already restricted his overtime twice, within a month after he filed the "official charge of discrimination and retaliation" in March 2019.  (*Id.* ¶¶ 29, 31–32.)[6]  The timing of the EEO office's determination, together with the temporal proximity of the plaintiff's protected activity and the defendants' conduct, establish an inference of retaliation.  *See Redd v. N.Y. State Div. of Parole*, 923 F. Supp. 2d 371, 388 (E.D.N.Y. 2012) ("[I]t is the role of the court to 'exercise judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).[7]

## CONCLUSION

For these reasons, the defendants' motion to dismiss is granted as to the claims against the New York City Department of Corrections and denied as to the claims against the City of New York.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
     May 17, 2024

---

[6] The plaintiff does not allege where he filed this charge, but the defendants concede that the filing was a protected activity and do not argue that they were unaware of the filing.

[7] The Court does not reach the question of whether the plaintiff has also alleged an inference of retaliation because the defendants treated similarly situated employees who did not engage in protected activity more favorably.  (ECF No. 17 at 11–12 (citing *Turnbull v. JPMorgan Chase & Co.*, No. 21-CV-3217, 2022 U.S. Dist. LEXIS 189373, at *18–19 (S.D.N.Y. Oct. 17, 2022)).)