UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
STANLEY CHIN,

                          Plaintiff,                            **OPINION & ORDER**

       v.                                                              23-CV-5268
                                                                             (Donnelly, J.)
NEW YORK CITY DEPARTMENT OF CORRECTION       (Marutollo, M.J.)
and CITY OF NEW YORK,

                          Defendants.
------------------------------------------------------------------x
**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       Plaintiff Stanley Chin brings this action against Defendants New York City Department of Correction ("DOC") and the City of New York (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL"). *See* Dkt. No. 1. Plaintiff, a retired Assistant Deputy Warden at DOC, alleges that Defendants harassed him, discriminated against him, and retaliated against him "on the basis of his race, national origin, color, sex, sexual orientation, and in retaliation for his protected complaint regarding discriminatory treatment." *Id.*

       Currently pending before this Court is Plaintiff's motion to compel the depositions of former DOC Commissioner Cynthia Brann and former Chief of Department Hazel Jennings. *See* Dkt. No. 31. High-ranking public officials, including former Commissioner Brann and former Chief of Department Jennings, can be deposed only upon a showing of "exceptional circumstances justifying the deposition[s]—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *See Lederman v. New York City Dep't of Parks and Rec.*, 731 F.3d 199, 203 (2d Cir. 2013). This case lacks any exceptional circumstances that would justify

compelling former Commissioner Brann and former Chief of Department Jennings's testimony. Accordingly, for the reasons set forth below, the Court **denies** Plaintiff's motion.

I. <u>**Background**</u>

    A.     **Relevant Factual Background**

Plaintiff is a "heterosexual [] male of Chinese descent." Dkt. No. 1 ¶ 10. Plaintiff began working for DOC on or about April 2, 1987 and was promoted to the position of Assistant Deputy Warden on or about February 4, 2020. *See id.* ¶¶ 11, 12. According to Plaintiff, "[o]n or about June 19, 2018, Plaintiff [] received a letter dated June 18, 2018 stating that he had been named as a Respondent to a complaint of sexual harassment filed by Nina Castleberry." *Id.* ¶ 13. Plaintiff alleges that Ms. Castleberry "did not actually complain" that Plaintiff "sexually harassed her, but only that he had been aware of some aspect of the allegations." *Id.* ¶ 14. On or about July 9, 2018, Plaintiff filed a rebuttal to Ms. Castleberry's complaint, in which he stated "that he would like to 'place an EEO complaint on Officer Nina Castleberry' and that he 'would like to include Warden Charlton Lemon, ADW Demetria Gives (Executive Officer), and Officer John Harvin.'" *Id.* ¶ 15. In the rebuttal, which Plaintiff refers to as a complaint, Plaintiff "described a number of specific instances of personal hostility towards himself and others relating to discipline and due to inter-office romantic relationships." *Id.* ¶ 16. Plaintiff alleges that a number of racial and sexual epithets were directed towards him. *Id.* ¶¶ 17-18. Plaintiff, however, alleges that "Defendants' EEO office failed to interpret the complaint as a charge of discrimination" and, in August 2018, "Defendants' EEO office denied that he had filed an EEO complaint regarding the racial slurs and other activity in the workplace." *Id.* ¶ 23.

Plaintiff claims that he was immediately retaliated against after he made his EEO complaint, including being passed over for overtime and being forced "to justify actions he took

in the normal course of business." *Id.* ¶¶ 26-30.  On July 22, 2019, Defendants' EEO office "substantiated" Plaintiff's "allegations of discrimination and harassment on account of national origin, race, and sexual orientation." *Id.* ¶ 41.  By September 2019, Plaintiff claims that Warden Lemon altered vacation-related policies in relation to Plaintiff in retaliation for his complaints.  *See id.* ¶ 42.  Plaintiff also claims he was subject to a "monthly overtime restriction in direct retaliation for his complaints of discrimination and harassment." *Id.* ¶ 43.  At the same time, Plaintiff claims that unqualified officers were permitted to work shifts that Plaintiff typically worked prior to his complaint.  *See id.* ¶¶ 43-44.  Plaintiff was effectively forced to retire from DOC on June 1, 2020. *See id.* ¶ 47.

Defendants claim that Plaintiff has failed to "establish a *prima facie* case of retaliation because discovery has yielded no evidence of causation between protected activities—Plaintiff's complaints of discrimination—and adverse actions, most notably the alleged overtime restrictions."  Dkt. No. 31, at 1.  "In the event that Plaintiff establishes his *prima facie* case, Defendants can show a legitimate, nonretaliatory reason for the overtime restrictions, namely that Plaintiff violated DOC policy by significantly exceeding his allotted overtime."  *Id.* ("Other similarly-situated employees who significantly exceeded their overtime and did not complain of discrimination also received such restrictions.").

### B. Plaintiff's Motion

On May 23, 2024, Plaintiff noticed the depositions of former Commissioner Brann and former Chief of Department Jennings.  *See id.* at 2.  On May 31, 2024, Defendants objected to the request for former Commissioner Brann and former Chief of Department Jennings's depositions. *See id.*  Following meet-and-conferrals, Defendants declined to produce former Commissioner Brann or former Chief of Department Jennings "for remote depositions or written depositions, or

3

to produce their personal contact information on the basis that they were, prior to retirement, high-ranking government officials." *Id.*

On July 12, 2024, Plaintiff filed his motion to compel the depositions of former Commissioner Brann and former Chief of Department Jennings. *See id.* at 1. Plaintiff requests that the Court order Defendants to produce former Commissioner Brann and former Chief of Department Jennings for deposition, or "to identify them fully so they can be subpoenaed." *Id.* at 3. Plaintiff notes that he has "agreed to keep the depositions brief, to take them remotely, or even to conduct the depositions by written question" pursuant to Fed. R. Civ. P. 31. *Id.*

Plaintiff argues that deposing former Commissioner Brann and former Chief of Department Jennings is necessary because Plaintiff "sent, by both email and certified mail, letters in September of 2018 detailing not only the harassment and discrimination to which Plaintiff [] was subjected, but also systematic discrimination within the EEO process related to Warden Lemon." *Id.* at 2. Plaintiff argues that the rule requiring "exceptional circumstances" to depose high-ranking officials should not apply to former Commissioner Brann or former Chief of Department Jennings because they are retired. *See id.* But even if this rule applies to former Commissioner Brann or former Chief of Department Jennings, Plaintiff argues that they supervised Warden Lemon, whom Plaintiff alleges retaliated against him for using official processes. *See id.* Plaintiff argues that he is otherwise not able to ascertain "what, if any, conversations were had within management regarding his complaint without deposing" former Commissioner Brann and former Chief of Department Jennings. *Id.* at 2-3.

Defendants oppose Plaintiff's motion to compel and argue, in essence, for a protective order[1] precluding the depositions of former Commissioner Brann and former Chief of Department Jennings. *Id.* at 3. Defendants argue that Plaintiff has not shown that there are "exceptional circumstances which warrant [former Commissioner Brann or former Chief of Department Jennings's] depositions or identifying them by providing contact information." *Id.* at 2. In short, Defendants allege that Plaintiff's motion should be denied because former Commissioner Brann and former Chief of Department Jennings "are former high-ranking government officials, do not have personal knowledge of the facts of this case, and Plaintiff has not met his burden of demonstrating exceptional circumstances justifying their depositions." *Id.* at 3.

Defendants note that former Commissioner Brann "headed an agency employing more than 7,000 uniformed officers and almost 2,000 civilian employees." *Id.* Plaintiff conceded that "there were at least five levels of management between himself and Commissioner Brann." *Id.* at 4. Similarly, former Chief of Department Jennings served as "DOC's highest-ranked uniformed officer," "was in charge of operations of the City's jails and oversaw more than 7,000 uniformed officers." *Id.* Plaintiff conceded that there were "at least four levels of management between Chief of Department Jennings and Plaintiff."

Defendants also argue that Plaintiff has not established that former Commissioner Brann or former Chief of Department Jennings "have unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome, or intrusive means." *Id.* at 4. Besides Plaintiff having allegedly sent letters to former Commissioner Brann or former Chief of Department Jennings about the alleged discrimination, Defendants

---

[1] Under Fed. R. Civ. P. 26(c), a "party . . . may move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1).

5

contend that "Plaintiff does not allege, let alone cite evidence, that either former Commissioner Brann or former Chief [of Department] Jennings acknowledged receipt or otherwise responded to these letters, read them, [] instructed Chief Lemon to take adverse action against Plaintiff for sending them, or that they were otherwise involved in the decisions to restrict Plaintiff's overtime or any other challenged actions." *Id.* at 4-5.  Defendants add that "a search of Chief Lemon's email inbox did not yield any communications from [former] Commissioner Brann or [former] Chief of Department Jennings concerning the allegations in this action." *Id.*  Further, Defendants contend that the sought-after discovery can be obtained through less burdensome means. *See id.*  Finally, Defendants contend that Plaintiff has not justified production of the personal contact information of former Commissioner Brann or former Chief of Department Jennings, particularly as doing so would present significant safety risks to both individuals. *See id.*

## II. Discussion

As noted above, "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman*, 731 F.3d at 203.  These "exceptional circumstances" are necessary both because it is "not the function of [a] court to probe the mental processes" of agency decision-makers, *United States v. Morgan*, 313 U.S. 409, 422 (1941), and because allowing such depositions would interfere with the functioning of the Executive Branch, *see Lederman*, 731 F.3d at 202-03 (affirming denial of the plaintiffs' request to depose the Mayor of the City of New York and a former Deputy Mayor).

"*Lederman* stands for the proposition that "high-ranking government officials" should not be "subject to depositions[,]" as these officials "have greater duties and time constraints than other

6

witnesses," and, "[i]f courts did not limit these depositions, such officials would spend an inordinate amount of time tending to pending litigation." *Haskell v. Cnty. of Nassau*, No. 22-CV-1713 (OEM) (JMW), 2024 WL 623727, at *4 (E.D.N.Y. Feb. 14, 2024) (quoting *Marisol A. by Forbes v. Giuliani*, No. 95-CV-10533 (RJW), 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998)); *Lederman*, 731 F.3d at 203; *cf. Markowitz v. Precipart Corp.*, No. 20-CV-5033 (GRB) (JMW), 2022 WL 1508638 (E.D.N.Y. Apr. 15, 2022) (apex deposition of high-ranking corporate executives given special scrutiny by the courts). Indeed, *Lederman*'s rule is part of a longstanding rule stemming from *Morgan*, in which "the Supreme Court long ago expressed concern that the District Court had required a high-ranking government official [] to submit to a deposition." *Lederman*, 731 F.3d at 203 (noting that "courts have relied on *Morgan* to hold that a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action, 'including the manner and extent of his study of the record and his consultation with subordinates.'" (citing *Morgan*, 313 U.S. 409)).

The rule set forth in *Lederman*, however, is not absolute. "Depositions of high-ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated." *Presti v. City of New York*, 609 F. Supp. 3d 204, 207 (E.D.N.Y. 2022) (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). At the same time, depositions of high-ranking government officials as a matter of course when their agencies are sued over one of their policies would create "a tremendous potential for abuse or harassment," *K.C.R. v. Cty. of Los Angeles,* No. 13-CV-3806, 2014 WL 3434257, *3 (C.D. Cal. July 11, 2014) (quotation omitted), and "would . . . likely discourage people" from accepting Government positions, *F.D.I.C. v. Galan-Alvarez*, No. 1:15-mc-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015). Such an outcome would threaten the functioning of the executive branch of the government and fly in the

face of the Second Circuit's warning that without strict limits on plaintiffs' ability to depose high-ranking, those officials will soon find themselves "spend[ing] 'an inordinate amount of time tending to pending litigation'" in the relevant case and others. *Lederman*, 731 F.3d at 203 (quoting *Bogan,* 489 F.3d at 423).

As the party seeking the deposition, Plaintiff "bear[s] the burden of showing that the deposition of the [high-ranking officials] is appropriate under these criteria." *Winfield v. City of New York*, No. 15-CV-05236 (LTS) (KHP), 2018 WL 4350246, at *1 (S.D.N.Y. Sept. 12, 2018); *see also Presti*, 609 F. Supp. 3d at 207 (explaining that the "burden on Plaintiffs is more searching" to obtain the former Mayor's deposition).

### A. The *Lederman* rule applies to current and former high-ranking government officials

As an initial matter, and contrary to Plaintiff's assertion, the fact that former Commissioner Brann and former Chief of Department Jennings are retired does not render the apex rule set forth in *Lederman* any less appropriate. The *Lederman* "doctrine applies to both former and current high-ranking officials." *Presti*, 609 F. Supp. 3d at 207 (citing *Lederman*, 731 F.3d at 203)). "While the rationale for the decision in *Lederman* rested in part on the official's current duties and time constraints, case law makes clear that the doctrine applies to 'former high-ranking officials' as well on the theory that '[s]ubjecting former officials decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service.'" *In re New York City Policing During Summer 2020 Demonstrations*, 677 F. Supp. 3d 206, 208 (S.D.N.Y. 2023) (citing *In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-1570 (GBD) (SN), 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020)).

"Subjecting former officials' decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a deterrent to qualified candidates for public service." *United States v. Wal-Mart Stores*, No. 01-CV-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002); *Dobson v. Vail*, No. 10-CV-5233 (KLS), 2011 WL 4404146, at *1 (W.D. Wash. Sept. 21, 2011) ("Former high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation." (quoting *Arnold Agency v. West Virginia Lottery Com'n*, 206 W.Va. 583, 599 (W. Va. 1999)).

Significantly, "[i]f the immunity *Morgan* [*II*] affords is to have any meaning, the protections must continue upon the official's departure from public service." *Wal-Mart Stores*, 2022 WL 562301, at *3; *see also United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 318 (D.N.J. 2009) ("Having found that *Morgan* [*II*] applies to former high-ranking officials, there can be no doubt that *Morgan* applies to . . . the former Administrator of the EPA."); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049-50 (E.D. Cal. 2010) (General rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials). "The integrity of administrative proceedings and the underlying decisionmaking process of agency officials are just as important where the official to be questioned no longer serves in the same position," and "indiscriminate depositions" of such officials "would . . . likely discourage people" from accepting those positions, "irrespective of whether those deposed were current or former officials." *F.D.I.C.*, 2015 WL 5602342, at *4.

Accordingly, the *Lederman* rule applies to former Commissioner Brann and former Chief of Department Jennings even though they have retired from their high-ranking positions.

9

> **B.    Plaintiff has not established the existence of exceptional circumstances that would warrant the depositions of former Commissioner Brann or former Chief of Department Jennings**

As noted above, the rare and narrow exception to the rule against subjecting high-ranking current and former officials like former Commissioner Brann or former Chief of Department Jennings to depositions in civil actions is when the party seeking the deposition can demonstrate the existence of *"exceptional circumstances." Lederman*, 731 F.3d at 203 ("party must demonstrate exceptional circumstances justifying the deposition"); *see also Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); *In re Office of Inspector Gen., R.R. Retirement Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) (advising that the district court "shall remain mindful of the requirement that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted") (emphasis added); *In re United States (Reno & Holder)*, 197 F.3d 310, 313 (D.C. Cir. 1999).

To depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means. *See Lederman*, 731 F.3d at 203. High-ranking government officials are generally shielded from depositions because they have "greater duties and time constraints than other witnesses." *Id.* (citation omitted). If courts did not limit these depositions, such officials would spend "an inordinate amount of time tending to pending litigation." *Id.* (citation omitted).

10

Satisfying this heavy burden belongs to the requesting party. *See In re United States (Reno & Holder)*, 197 F.3d at 314 (quashing subpoena issued to the Attorney General, finding that defendant failed to "show[ ] that there are no other sources for the information he seeks"); *see, e.g.*, *In re United States (Kessler)*, 985 F.2d 510, 512-13 (11th Cir. 1993); *Bogan*, 489 F.3d at 423 (affirming the issuance of a protective order precluding the deposition of the Mayor of Boston where plaintiff failed to demonstrate that the sought-after information was unavailable from other sources); *Low v. Whitman*, 207 F.R.D. 9 (D.D.C. 2002) (issuing a protective order where the information sought from the EPA's Deputy Chief of Staff was readily available from other witnesses); *accord Marisol A.*, 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998); *Wirtz v. Local 30, Int'l Union of Operating Engineers*, 34 F.R.D. 13, 14 (S.D.N.Y. 1963).

Here, Plaintiff has identified no "exceptional circumstances" that would warrant the deposition of former Commissioner Brann or former Chief of Department Jennings, and, indeed, none appear to exist. *See Presti*, 609 F. Supp. 3d at 207 ("the attempt to depose [a former mayor] fails at the first stage—that is, Plaintiffs cannot establish first-hand knowledge, let alone 'unique' knowledge."). Plaintiff cannot establish that former Commissioner Brann or former Chief of Department Jennings have unique personal information that is essential to their case or that the information they seek cannot be obtained from a less burdensome source. *See In re United States (Reno & Holder)*, 197 F.3d at 314 (exceptional circumstances require showing "*both* that the discovery sought [from the high-level government official] is relevant and necessary *and* that it cannot otherwise be obtained) (emphasis added). In fact, Plaintiff concedes that "there were at least five levels of management between himself and Commissioner Brann" and "at least four levels of management between [himself and] Chief of Department Jennings." *See* Dkt. No. 31, at 4.

11

Moreover, Plaintiff has failed to show why any lingering questions could not be resolved through other discovery mechanisms, such as through depositions of other officials at DOC. *See Lederman*, 731 F.3d at 203 (depositions of high-ranking officials was not justified where plaintiffs failed to show "that the relevant information could not be obtained elsewhere"); *see, e.g.*, *Nec Corp. v. United States*, 151 F.3d 1361, 1375 (Fed. Cir. 1998); *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 461 (E.D.N.Y. 2011) (Spatt, J.) ("In weighing the undue burden against the necessity of the testimony, the Court may also consider under Rule 26(b)(2)(C)(i) if the discovery can be 'obtained from some other source that is more convenient' or 'less burdensome.'"); *cf. C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 269 (E.D.N.Y. 2023), *aff'd*, 2024 WL 127967 (E.D.N.Y. Jan. 11, 2024) ("Unlike the plaintiffs in *Lederman*, Plaintiffs have shown the Commissioners have or should have first-hand knowledge of Plaintiffs' claims, which was not—and cannot be—obtained from other individuals.").

Ultimately, Plaintiff fails to meet his burden of showing that exceptional circumstances exist to warrant the depositions of former Commissioner Brann and former Chief of Department Jennings. *See Ebbert v. Nassau Cnty.*, No. CV 05-5445 (AKT), 2007 WL 674725, at *6 (E.D.N.Y. Mar. 5, 2007) ("No evidence has been presented thus far to demonstrate that [the commissioner] had any direct involvement in the actual preparation or administration of the examinations nor any communications with any representatives of Nassau County about the pay scales at issue.").

### III. <u>Conclusion</u>

Accordingly, for the foregoing reasons, Plaintiff's motion to compel is **DENIED**. The Court enters a protective order precluding the depositions of former Commissioner Brann and former Chief of Department Jennings in this matter.

Dated: Brooklyn, New York
       July 24, 2024

                                           **SO ORDERED**.

                                     *s/ Joseph A. Marutollo*
                                   JOSEPH A. MARUTOLLO
                                   United States Magistrate Judge